LABORDE, Judge.
A group of five instructional supervisors, Francis Beason, Alvin Rollins, Irvin Brouil-lette, Connie Chenevert and Hope Teague (hereinafter plaintiffs), filed suit against the Rapides Parish School Board (hereinafter School Board), alleging that they had been improperly classified as Supervisor Ills and thereby unlawfully demoted in rank and salary. After a trial on the merits, the trial court rendered a verdict in favor of the School Board. Plaintiffs now appeal. We affirm.
FACTS
On July 7, 1970, the School Board approved and adopted salary schedules that affected supervisory personnel. The supervisory personnel were divided into three categories (I — III), each of which had its own pay schedule. The position of instructional supervisor was classified as Supervisor II, and the trial court found that the plaintiffs had established that they were performing work classified by the School Board in 1970 as Supervisor II work. Furthermore, under the 1970 salary schedules issued by the School Board, the classification of supervisory personnel was left to the discretion of the Superintendent with School Board approval.
Allen Nichols, Rapides Parish Superintendent of Schools since 1967, testified extensively at trial as to the classificatory system at issue. He stated that in the middle and late seventies the School Board faced severe financial difficulties. In order to cut back expenses it implemented an “attrition” program in 1978. The attrition plan did not necessitate the dismissal of any employee. Instead, newly hired employees were given reduced monthly or hourly work schedules. The plan proved to be unpopular and was rescinded by the School Board on January 2, 1979, less than ten months after it was adopted. Superintendent Nichols further testified that the decision was made as a matter of policy to eliminate the classification and pay scale of Supervisor IIs altogether as regards non federally funded supervisors. Subsequent to the 1978-9 academic year, no individuals (including the plaintiffs who were all hired as supervisors between 1978 and 1981) were promoted from Supervisor III to Supervisor II and as of the date of trial, only one Supervisor II remained.
The trial court found that, although the School Board never formally eliminated the Supervisor II category, Superintendent Nichols had, at all times, followed the wishes of the majority of the School Board. Accordingly, the trial court concluded that there was no legal basis for recovery in this case.
SCHOOL BOARD POLICY
On appeal, plaintiffs contend that the trial court erred in not finding that the 1970 School Board policy of placing instructional supervisors on a category II level and paying them on that level had been violated. Essentially, plaintiffs argue that Superintendent Nichols arbitrarily decided their position and salary without the requisite authorization from the School Board. They point out that the School Board never repealed or amended its 1970 classificatory scheme and that Superintendent Nichols was not able to produce any School Board resolutions authorizing the placement of newly hired instructional supervisors in a Supervisor III level rather than a Supervisor II level.
We note first that all plaintiff supervisors were tenured teachers before they became supervisors and were required to hold teacher’s certificates as a condition of employment. An employee who is required to and does hold a teacher’s certificate is a “teacher” within the intendment of the Teacher Tenure Law. LSA-R.S. 17:441; State ex. rel. Parker v. Vernon Parish School Board, 222 La. 91, 62 So.2d 111 (1952). LSA-R.S. 17:81 authorizes a parish school board to fix teacher’s salaries and to adopt rules and regulations to carry out its governmental functions provided these rules and regulations are not inconsistent with the law or with the regulations of the Department of Education. Unless *283 there is clear showing of abuse of the authority granted to a school board under the statutory law, the courts should not interfere with a school board’s management. Earnest v. Caldwell Parish School Board, 368 So.2d 801 (La.App. 2d Cir.1979).
In the instant case, any change in classification and pay made by the Superintendent required School Board approval. At trial, Superintendent Nichols testified that the School Board was completely aware of and approved of his placement of the Supervisors Ills.
“Q. Mr. Nichols, are you familiar with the five plaintiffs in this matter?
A. I am.
Q. Were you personally involved in their hiring in their position?
A. I was.
Q. And, uh, what was your position in connection with their employment?
A. Well, as superintendent, uh, I made a recommendation to the board that they be employed. And in all cases the board, uh, accepted my recommendation.
Q. And did you make that recommendation that they be employed in a particular classified position?
A. Yes. Salary. Otherwise. Yes.
Q. And that was voted on by the board?
A. Approved by the board.
Q. Were each of the five individuals employed as a supervisor III?
A. They were employed in that category and that’s the way I paid ’em.
Q. And this was voted on by the board?
A. In each case.
Q. And this is the way they’ve been paid.
A. Yes.”
Superintendent Nichols also pointed out that Supervisor Ills continued to be hired, even after the plaintiffs brought their complaint to the School Board.
The trial court stated that it had no doubt that Superintendent Nichols, who is also secretary-treasurer of the School Board, had followed the wishes of the majority of the School Board at all times. The court found that the School Board refused to promote the plaintiffs after determining that it could not afford to increase the pay schedules of the substantial number of supervisors. The trial court concluded that this was a reasonable administrative policy which applied to a class as a whole (i.e., all persons hired as instructional supervisory personnel after 1978). After carefully reviewing the entirety of the record, we cannot say that the trial court erred in finding that the Superintendent had School Board approval when he placed plaintiff supervisors in the Supervisor III category.
TEACHERS’ TENURE LAW
Plaintiffs also contend that the trial court erred in finding that the Louisiana Teachers’ Tenure Law had not been violated. They argue that their placement in a Supervisor III category acted as an unlawful demotion in rank and salary. We disagree.
The Teachers’ Tenure Law, LSA-R.S. 17:441 et seq., protects a teacher from transfer to a lower position with a corresponding reduced salary or rank as well as from dismissal without cause. Its provisions are not applicable in the instant case where no one was assigned to a position of lower salary or rank. In fact, each of the plaintiffs was promoted from a teaching position to a higher administrative position.
In Long v. Lafourche Parish School Board, 460 So.2d 651, 654 (La.App. 1st Cir.1984), the First Circuit stated that, “[i]n administering public schools, a parish school board is given broad powers and responsibilities. When acting in good faith, a board is empowered with the authority to consolidate and/or abolish positions. Further, the discontinuance of a position does not automatically remove or demote the teacher holding that position.” In the instant case, the Supervisor II category was abolished but there was no lowering of salary or professional standing so as to violate the provisions of the Teachers’ Tenure Law.
*284 For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are taxed to plaintiffs.
AFFIRMED.